Roy A. Katriel (SBN 265463)
**THE KATRIEL LAW FIRM, P.C.**
2262 Carmel Valley Road, Suite 201
Del Mar, California 92014
Telephone: (619) 363-3333
Facsimile:  (866) 832-5852
e-mail: rak@katriellaw.com

Ralph B. Kalfayan (SBN 133464)
Ian D. Krupar (SBN 350391)
**THE KALFAYAN LAW FIRM, APC**
2262 Carmel Valley Road, Suite 200
Del Mar, California 92014
Telephone: (619) 232-0331
Facsimile: (619) 232-4019
e-mail: ralph@rbk-law.com
e-mail: ian@rbk-law.com

*Counsel for Plaintiff Lisa Bodenburg and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| LISA BODENBURG, On Behalf Of Herself And All Others Similarly Situated, | **Case No. 3:23-cv-4409-TLT** |
| Plaintiff, | **PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION** |
| v. | |
| APPLE INC., | **Judge:** **Hon. Trina L. Thompson** |
| Defendant. | **Hearing Date:** **July 16, 2024** |
| | **Time:** **2:00 pm** |
| | **Courtroom:** **9, 19th Floor** |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION……………………………………………………1

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION…………………………..1

I.   INTRODUCTION, FACTUAL BACKGROUND, AND SUMMARY OF
     ARGUMENT……………………………………………..……………………..……1

     A.  The Breach of Contract Claim (Count I) Should Be Certified…………………….2

     B.  The Statutory CLRA, FAL, and UCL Claims Also Should Be Certified……………7

     C.  The Prior iCloud Breach Of Contract Litigation And Class Certification……….…..7

II.  PLAINTIFF BODENBURG MEETS THE CLASS CERTIFICATION STANDARDS….8

     A.  The Numerosity Requirement Is Readily Satisfied……………………………..……8

     B.  The Typicality Requirement Is Readily Met………………………………..……..9

     C.  Plaintiff And Her Counsel Are Adequate Class Representatives……………………..11

         1.  Bodenburg Is An Adequate Class Representative…………………..……………11

         2.  Plaintiff's Counsel Are Adequate Representatives Of The Class…………………11

     D.  Common Questions Predominate For The Breach Of Contract Claim………………..12

         1.  The Existence And Terms Of The iCloud Form Contract Present A
             Predominating Common Question……………………………………..………13

             a.  California's Adoption Of Restatement (Second) Contracts § 211(2)
                 Supports Classwide Treatment……………………………………………16

             b.  California's Contract Maxim That Ambiguities In Form
                 Contracts Are Construed Against The Drafter Support Classwide
                 Treatment……………………………………………..………18

         2.  Proof Of Breach Also Poses Predominating Common Questions………………..19

     E.  Bodenburg's Consumer Protection Statutory Claims Under The CLRA, FAL,
         And UCL Are Also Subject To Common Predominating Evidence…………………..20

         1.  Interpretation Of Apple's Alleged Misrepresentation Or False
             Advertisement Is Subject To Common Predominating Evidence……………….20

         2.  Proof Of Reliance For The Statutory Claims Also Is Subject To Common
             Predominating Evidence Given California's Presumption…………………..……22

3.   Plaintiff's  Economic Damages Expert's Report Provide A Common Method Of Calculating Classwide Damages……………………………………………….22

F.     A Class Action Is A Superior Form To Adjudicate Class Members' Claims………..23

CONCLUSION………………………………………………………………………23

1

**TABLE OF AUTHORITIES**

2

**Cases:**

3

*Amchem Products, Inc. v. Windsor,*
521 U.S. 591 (1997)……………………………………………………………………12

*Amgen Inc. v. Conn. Ret. Plans,*
568 U.S. 455 (2013)…………………………………………………………………….8

*Bally v. State Farm Life Ins. Co.,*
335 F.R.D. 288 (N.D. Cal. 2020)………………………………………………………17

*Cabrera v. Bayer Healthcare LLC,*
2024 WL 1699357 (C.D. Cal. Feb. 23, 2024)…………………………………………24

*Chinitz v. Intero Real Estate Srvcs.,*
2020 WL 7391299 (N.D. Cal. Jul. 22, 2020)……………………………………….19-20

*CLRB Hanson Indus. LLC v. Google Inc.,*
2008 WL 11388378 (N.D. Cal. Dec. 16, 2008)……………………………………….20

*Congdon v. Uber Tech., Inc.,*
291 F. Supp.3d 1012 (N.D. Cal. 2018)………………………………………………18

*DZ Reserve v. Meta Platforms, Inc.,*
96 F.4th 1223 (9th Cir. 2024)…………………………………………………………22

*Ellis v. Costco Wholesale Corp.,*
657 F.3d 970 (9th Cir. 2011)………………………………………………...…………11

*Erica P. John Fund, Inc. v. Halliburton Co.,*
563 U.S. 804 (2011)……………………………………………………………………12

*Ewert v. eBay,*
2010 WL 469259 (N.D. Cal. Oct. 25, 2010)…………………………………………16

*Gaudin v. Saxon Mortg. Srvcs.,*
297 F.R.D. 417 (N.D. Cal. 2013)……………………………………………………12

*Ham v. Hain Celestial Grp., Inc.,*
70 F. Supp.3d 1188 (N.D. Cal. 2014)………………………………………..…………20-21

*Hanlon v. Chrysler Corp.,*
150 F.3d 1011 (9th Cir. 1998)…………………………………………...…………9, 11

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

*Bodenburg, et al. v. Apple, Inc.,*                          Plaintiff's Motion For Class Certification
No. 3:23-cv-4409-TLT

*In re Conseco Life Ins. Litig.*,
920 F. Supp.2d 1050 (N.D. Cal. 2013), order vacated on other grounds pursuant to parties' settlement, 2013 WL 10349975 (N.D . Cal. Nov. 8, 2013)…………………………………………17

*In re Heritage Bond Litig.*,
2004 WL 1638201 (C.D. Cal. Jul. 12, 2004)…………………………………………………9

*In re High-Tech Employee Antitrust Litig.*,
985 F. Supp.2d 1167 (N.D. Cal. 2013)……………………………………………..……..8, 11

*In re Med. Capital Sec. Litig.*,
2011 WL 5067208 (C.D. Cal. Jul. 26, 2011)…………………………………………………..15

*In re TFT-LCD Antitrust Litig.*,
267 F.R.D. 291 (N.D. Cal. 2010)……………………………………………………………13

*Keegan v. American Honda Motor Co., Inc.*,
284 F.R.D. 504 (C.D. Cal. 2012)……………………………………………………………11

*Mirkin v. Wasserman*,
5 Cal. 4th 1082 (1993)……………………………………………………….……………22

*Morris v. Allstate Ins. Co.*,
16 F. Supp.3d 1095 (C.D. Cal. 2014)………………………………………………….……14

*Risinger v. SOC, LLC*,
2015 WL 13670894 (D. Nev. Sept. 30, 2015), *aff'd* 708 Fed. App'x 304 (9th Cir. 2017)…..……14

*Rodman v. Safeway, Inc.*,
2014 WL 988992 (N.D. Cal. Mar. 10, 2014)…………………………………...……………16

*Rodman v. Safeway Inc.*,
125 F. Supp.3d 922 (N.D. Cal. 2015)…………………………………………..……………22

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992)………………………………………………………………9

*SCC Alameda Point LLC v. City of Alameda*,
897 F. Supp.2d 886 (N.D. Cal. 2012)………………………………………………………18

*Schulken v. Washington Mut. Bank*,
2012 WL 28099 (N.D. Cal. Jan. 5, 2012)……………………………………………………15

*Simpson v. Fireman's Fund Ins. Co.*,
231 F.R.D. 391 (N.D. Cal. 2005)…………………………………………………………..9

*Bodenburg, et al. v. Apple, Inc.*,                                   Plaintiff's Motion For Class Certification
No. 3:23-cv-4409-TLT

*Tahoe Nat'l Bank v. Phillips*,
4 Cal.3d 11 (1971)……………………………………………………..………18-19

*The Civil Rights Educ. & Enforcement Ctr. V. RLJ Lodging Trust*,
2016 WL 314400 (N.D. Cal. Jan. 25, 2016)………………………………………..9

*Wal–Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)……………………………………………...….………8, 12

*West v. California Services Bureau, Inc.*,
323 F.R.D. 295 (N.D. Cal. 2017)……………………………………………..…9

*Williams v. Apple, Inc.*,
338 F.R.D. 629 (N.D. Cal. 2021)……………………….………………………..7, 8, 9, 13, 14

*Williams v. Apple, Inc.*,
449 F. Supp.3d 892 (N.D. Cal. 2020)…………………………………………7, 13-14

*Zinser v. Accufix Research Inst., Inc.*,
253 F.3d 1180, amended by 273 F.3d 1266 (9th Cir. 2001)…………………………………..8

**Federal Rules:**

Fed. R. Civ. P. 23…………………………………………….………………passim

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE THAT on July 16, 2024 at 2:00 pm, or at such other time as this matter may be heard, at Courtroom 9 of the United States District Court for the Northern District of California's San Francisco Division, Plaintiff Lisa Bodenburg ("Plaintiff" or "Bodenburg") will and does hereby move under Federal Rule of Civil Procedure 23 for class certification.  This motion is supported by the Memorandum in Support, the Declaration of Roy A. Katriel, the Declaration of Lisa Bodenburg, the Declaration of Ralph B. Kalfayan, the Expert Report of Russell W. Mangum III, Ph.D., along with their respective exhibits, arguments of counsel, and all other filings in this case.  Plaintiff seeks an order certifying this action as a class action under Federal Rules of Civil Procedure 23(b)(3) and 23(b)(2) and appointing her and her counsel as class representative and Class Counsel, respectively.

Plaintiff seeks certification of a Rule 23(b)(3) and Rule 23(b)(2) Class defined as:

> All subscribers within the United States who during the Class Periods paid for an Apple iCloud subscription (also called "iCloud+" since June 2021).   The Class Period applicable to Count I (breach of contract) and Count IV (violations of UCL) of Plaintiff's First Amended Class Action Complaint is the period from September 1, 2019 until the date of the filing of Plaintiff's motion for class certification.  The Class Period applicable to Count II (CLRA violations) and Count III (FAL violation) of Plaintiff's Class Action Complaint is the period from September 1, 2020 until the date of the filing of Plaintiff's motion for class certification.

> Specifically excluded from the class definition are Apple, its employees, and directors, as well as all judicial officers assigned to this case, along with their staff and family members.

If the Court were to find this class definition overly broad or otherwise unsuitable for class certification, Plaintiff respectfully requests in the alternative certification of any narrower class or subclass definition suitable for class certification.

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION**

**I.    INTRODUCTION, FACTUAL BACKGROUND, AND SUMMARY OF ARGUMENT.**

Class certification should be granted.  At issue is a single breach of contract claim for money damages and injunctive relief under California law alleged in the First Amended Complaint ("FAC") and derivative claims under California's Consumer Legal Remedies Act ("CLRA"), False

Advertising Law ("FAL"), and Unfair Competition Law ("UCL") that all stem from the same facts giving rise to the breach of contract count.

### A. The Breach of Contract Claim (Count I) Should Be Certified.

The contract claim stems from verbatim identical form iCloud contracts drafted by Apple. iCloud is a service letting its users store content (like documents, photographs, emails, and text messages) on remote servers (*i.e.,* "on the cloud") instead of on the users' Apple devices. *See* FAC, ¶ 3. While Apple offers all its device owners 5 GB of iCloud storage for free, each of the putative class members paid monthly fees for higher iCloud storage levels that grant them "[a]dditional storage" for purchase beyond the 5 GB that all Apple device owners already had. *Id.*, ¶¶ 3-5; Ex. 1 to FAC [iCloud Legal Agreement], at § I.C (also filed herewith as Ex. 1 to Katriel Decl). During the class periods, Bodenburg subscribed to iCloud's paid subscription service. *See* Bodenburg Decl., at ¶ 2.

Each iCloud form contract from the beginning of the Class Periods until today contains the same identical contractual promise that Plaintiff alleges Apple breached:

> Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. ***Additional storage*** is available for purchase, as described below.

iCloud Legal Agreement last revised Jan. 23, 2023 [Ex. 1 to Katriel Decl.], at ¶ I.C. (emphasis added) (quoted in FAC, at ¶ 5); *see also* Exhibit 2 to Katriel Decl. [iCloud Legal Agreement last revised Sept. 18, 2023], at ¶ I.C (same language); Ex. 3 to Katriel Decl. [iCloud Legal Agreement last revised Sept. 19, 2019], at ¶ I.C (same language).

Further down the Agreement, Apple identifies the price list governing the "[a]dditional storage [that] is available for purchase" referenced in the foregoing contract clause. Section III.A of the Agreement directs users to a specific price list document: "For details about plans and pricing, please visit https://support.apple.com/en-us/HT20138." iCloud Legal Agreement [Ex. 1 to Katriel Decl.], at ¶ III.A (reprinted at FAC, ¶¶ 25-26, and attached as Ex. 2 to FAC). That Apple price list document— the only one referenced in the Agreement—provides that:

## iCloud+ plans and pricing

When you sign up for iCloud, you automatically get 5GB of free storage. If you need more iCloud storage or want access to premium features, you can upgrade to iCloud+.

### About iCloud+

iCloud+ is Apple's premium cloud subscription. It gives you more storage for your photos, files, and backups, and additional features* available only to subscribers:

**iCloud+ with 50GB storage**
- 50GB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for one camera

Share everything with up to five other family members.

**iCloud+ with 200GB storage**
- 200GB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for up to five cameras

Share everything with up to five other family members.

**iCloud+ with 2TB storage**
- 2TB of storage
- iCloud Private Relay
- Hide My Email
- Custom Email Domain
- HomeKit Secure Video support for an unlimited number of cameras

Share everything with up to five other family members.

You can upgrade to iCloud+ from your iPhone, iPad, iPod touch, Mac, or PC. After you upgrade, you'll be billed monthly.[1] See the monthly pricing and plans per country or region below.

* Not all features are available in all countries or regions. Without access to your IP address, some websites may require extra steps to sign in or access content after you turn on iCloud Private Relay. HomeKit Secure Video requires a supported iCloud

It also provides the specific amounts of "additional storage" to be received in exchange for paying a particular iCloud subscription tier price:

iCloud+ pricing

- North America, South America, Latin America, and the Caribbean
- Europe, the Middle East, and Africa
- Asia Pacific

North America, South America, Latin America, and the Caribbean

Bahamas (USD)
**50GB**: $0.99
**200GB**: $2.99
**2TB**: $10.99

Barbados (USD)
**50GB**: $0.99
**200GB**: $3.49
**2TB**: $11.99

Brazil (BRL)
**50GB:** R$ 4.90
**200GB:** R$ 14.90
**2TB:** R$ 49.90

Canada (CAD)
**50GB**: $1.29
**200GB**: $3.99

**2TB**: $12.99

Chile (CLP)
**50GB**: $650
**200GB**: $1900
**2TB**: $6500

Colombia (COP)
**50GB**: $3900
**200GB**: $12900
**2TB**: $44900

Mexico (MXN)
**50GB**: $17
**200GB**: $49
**2TB**: $179

Peru (PEN)
**50GB**: S/.2.90
**200GB**: S/.9.90
**2TB**: S/.34.90

United States[4] (USD)
**50GB**: $0.99
**200GB**: $2.99
**2TB**: $9.99

Ex. 2 to FAC (highlighting added) (also available at https://support.apple.com/en-us/HT20138 (the web address identified in Section III.A of the Agreement).[1]

All versions of the iCloud Legal Agreement that were in effect during the Class Periods had the foregoing contractual language.  *See* Ex. 2 to Katriel Decl., at § III.A (same language); Ex. 3 to Katriel Decl., at § III.A (same language).

Bodenburg alleges Apple breached this contractual promise and violated California's consumer protection laws (*i.e.,* the CLRA, FAL, and UCL) because when she subscribed to a paid iCloud plan (which Apple now calls "iCloud+"), she was to receive *both* the initial 5 GB of cloud storage already provided to her for free *and* the "*additional storage*" called for in the iCloud Legal Agreement and its price list. *See* FAC, at ¶¶ 8, 10, 12, 13.  But Bodenburg complains (and Apple now admits) that Apple did not deliver that. *See id.*, at ¶¶ 9, 11, 13.  Instead of providing the 200 GB

---

[1] Some time after Bodenburg filed this Class Action, Apple also added two new iCloud+ paid monthly subscription plans that offer 6 TB and 12 TB of cloud storage for $ 29.99 and $36.99 per month, respectively.  *See* https://support.apple.com/en-us/108047 (last visited Apr. 30, 2024).

of the paid iCloud storage subscription tier Bodenburg bought "in addition to" the 5 GB storage she already had for free, Apple provided only the paid cloud storage (*i.e.,* 200 GB) without including the 5 GB of storage that Bodenburg already had. *See id.*, at ¶ 19. While Bodenburg was promised the 200 GB of paid storage as "additional storage" to the 5 GB of free storage she already had, Apple only delivered the 200 GB of paid storage and shortchanged her the 5 GB storage she was getting all along (as were all others). *Id.*

Each version of the form iCloud agreement during the class period had a California choice of law term. *See* Ex. 1 to Katriel Decl., at § X.B ("Except to the extent expressly provided in the following paragraph, this Agreement and the relationship between you and Apple shall be governed by the laws of the State of California, excluding its conflicts of law provisions."); Ex. 2 to Katriel Decl., at § X.B (same language); Ex. 3 to Katriel Decl., at § X.B (same language). And, each has an integration clause, confirming that: "This Agreement constitutes the entire agreement between you and Apple, governs your use of the Service and *completely replaces any prior agreements* between you and Apple in relation to the Service." Ex. 1 to Katriel Decl., at § X.C.

Plaintiff alleges a straightforward claim for breach of the iCloud Agreements. She unremarkably interprets the agreement's contractual promise that: "Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. *Additional storage* is available for purchase, as described below" to mean that when she bought iCloud storage from Apple as part of a paid monthly subscription that "additional" amount of storage for which she paid would be *in addition to* the 5 GB of iCloud storage that Bodenburg and all Apple device owners already had and were receiving for free. This hews to the contractual language; the dictionary definition of the term "additional" is "in addition to."[2]

Apple posits a different interpretation, arguing that the contractual language means that,

---

[2] *See* https://www.oed.com/search/dictionary/?scope=Entries&q=additional (last visited Apr. 30, 2024) (Oxford English Dictionary definition of "Additional": "That is ***in addition to something else***; ***added, extra, supplementary***. Also used predicatively, with to (frequently in postmodifying verbless clause)") (emphasis added).

---

despite the Agreement representing the paid-for storage as being "[a]dditional storage," the storage bought *replaces* the 5 GB of storage Bodenburg and the class members already had and were getting for free with no paid subscription.  Thus, in Apple's view, the 5 GB of free storage Apple already provides to all its device users and the additional iCloud storage capacity Apple sells is "not accumulative." ECF No. 36 [Apple's Motion To Dismiss FAC], at 9:24-25.

Both sides maintain that the iCloud Legal Agreement is unambiguous.  *See* ECF No. 38 [Plaintiff's Opp. To Motion To Dismiss FAC], at 5:18 ("the pertinent text of the Agreement is plain, unambiguous, and direct"); ECF No. 40 [Apple's Reply In Supp. Of Motion To Dismiss FAC], at 7:12 ("Apple has not argued that the relevant language in the Agreement is ambiguous").  The Court has yet to rule which of these two interpretations is to be credited or whether the contract is ambiguous.  Regardless, however, because the identical language is involved in all class members' form contracts, interpretation of these standard agreements using California contract interpretation maxims presents the quintessential common question that predominates.  This is so whether or not these form agreements are deemed to have an ambiguity.  *See* Section II.D.1 *infra*.

If Plaintiff's interpretation of the iCloud form contract is credited, her proof of Apple's breach also is common and predominates.  This is so because Apple admits that the additional storage it offers for sale as part of any paid iCloud subscription is "not accumulative" but instead replaces the 5 GB of free storage Bodenburg and all putative class members already were receiving.  ECF No. 36 [Apple's Motion To Dismiss FAC], at 9:24-25.   The element of breach therefore is also subject to common predominating evidence; Apple's own admission.

And, because reliance is not an element of a breach of contract claim, the remaining requisite element is that of damages.  Here, Bodenburg submits the expert report of Russell W. Mangum II, Ph.D., who details a common method of calculating classwide damages.  *See generally* Mangum Expert Report, at ¶¶ 19-23.  As Dr. Mangum explains, if the conduct Plaintiff complains of is proven, each putative class members will have been shortchanged 5 GB of storage for which each paid but did not receive.  *See id.*, at ¶¶  20-22.  Mangum can calculate the value of those undelivered 5 GB of iCloud storage because each iCloud paid subscription plan involves a specific price for a set

number of gigabytes of storage, thus enabling a calculation of the value per gigabyte. *See id.*, at ¶ 22; *id.*, at ¶ 22, n.27.

**B.  The Statutory CLRA, FAL, and UCL Claims Also Should Be Certified.**

Bodenburg's CLRA, FAL, and UCL consumer protection claims also rely on predominating common proof.  This is so because, under California law, CLRA misrepresentation and FAL claims of the type alleged here are judged based on an objective "reasonable person" standard, as opposed to the subjective understanding of any individual class member.  Moreover, where as here, the alleged misrepresentation is material and was uniformly communicated to all or nearly all class members, California law applies a presumption of reliance for such claims.

The predominating common evidence applicable to Plaintiff's claims is discussed at Sections II.D *infra*.  Bodenburg also readily meets the numerosity, typicality, adequacy of representation, and superiority requirements for class certification as we show at Sections II.A-C; II.E *infra*.

**C.  The Prior iCloud Breach Of Contract Litigation And Class Certification.**

Bodenburg's action does not come before this Court on a clean slate.  Apple's same iCloud Legal Agreement has been the subject of a breach of contract class action in which a different named plaintiff claimed Apple breached this same agreement because Apple promised that, as part of iCloud, Apple would store users' data in Apple's facilities when in fact, Apple allegedly sent that data for storage in data centers owned by rival third parties like Amazon, Microsoft, or AT&T.  *See Williams v. Apple, Inc.*, 449 F. Supp.3d 892, 898-99 (N.D. Cal. 2020).  In one of the last class certification opinions by Judge Lucy Koh before her elevation to the Ninth Circuit, Judge Koh granted that plaintiff's class certification motion as to the her breach of contract claim for the same iCloud Legal Agreement at issue in this litigation.  *See Williams v. Apple, Inc.*, 338 F.R.D. 629 (N.D. Cal. 2021) (certifying breach of contract claim for part of class period). Judge Koh certified the action even after finding that the iCloud contract language at issue in *Williams* was ambiguous, such that its interpretation could require resort to extrinsic evidence.  *See Williams*, 449 F. Supp.3d at 909 (denying motion to dismiss: "Given the fact that Apple and Plaintiffs both provide reasonable

interpretations, the disputed contractual language is ambiguous, and this ambiguity raises a question of fact as to the parties' intent. The parties may well argue at a later stage of litigation that the intent of the parties or properly admitted extrinsic evidence supports their respective interpretations of the contract.") (internal quotations and citations omitted); *Williams*, 338 F.R.D. at 639 (certifying breach of contract claim and referring to Ninth Circuit authority that "affirmed the certification of a breach of contract class, even though the alleged breach at issue turned on the ambiguous term").

*Williams'* reasoning, which involved the same iCloud Legal Agreement against the same defendant (Apple), asserting the same legal count (breach of contract), and litigated by some of the same counsel representing Bodenburg now (*see* Katriel Decl., at ¶ 2), leads to the same conclusion here. Because Bodenburg meets all the requirements under Rule 23 her motion for class certification should be granted.

## II.     PLAINTIFF BODENBURG MEETS THE CLASS CERTIFICATION STANDARDS.

Class actions are governed by Federal Rule of Civil Procedure 23.   Plaintiff must show she meets each of the four requirements of Rule 23(a) and at least one subsection of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1186, *amended by* 273 F.3d 1266 (9th Cir. 2001). "A party seeking class certification must affirmatively demonstrate . . . compliance with the Rule." *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011).  "[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans,* 568 U.S. 455, 465-66 (2013) (quoting *Dukes,* 564 U.S. at 351). Nevertheless, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen,* 568 U.S. at 466. "Merits questions may be considered to the extent— *but only to the extent*—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id*. (quoted in *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp.2d 1167, 1179 (N.D. Cal. 2013)) (emphasis added).

### A.  The Numerosity Requirement Is Readily Satisfied.

Under Federal Rule of Civil Procedure 23(a)(1), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous

1   that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This is readily met here. It

2   is common knowledge that Apple, as the largest publicly traded company in the nation, has millions

3   of subscribers to its iCloud service. *See West v. California Services Bureau, Inc.*, 323 F.R.D. 295,

4   303 (N.D. Cal. 2017) ("In analyzing numerosity 'a court may make common-sense assumptions and

5   reasonable inferences'") (quoting *The Civil Rights Educ. & Enforcement Ctr. V. RLJ Lodging Trust*,

6   2016 WL 314400, at *6 (N.D. Cal. Jan. 25, 2016)); *see also Williams*, 338 F.R.D. at 637 (numerosity

7   undisputed for class of iCloud paying subscribers).[3]

8       **B.  The Typicality Requirement Is Readily Met.**

9       Federal Rule of Civil Procedure 23(a)(3) provides that, "[o]ne or more members of a class

10  may sue or be sued as representative parties on behalf of all members only if: . . . (3) the claims or

11  defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ.

12  P. 23(a)(3). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of

13  absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d

14  1011, 1020 (9th Cir. 1998). "In determining whether typicality is met, the focus should be 'on the

15  defendants' conduct and plaintiff's legal theory,' not the injury caused to the plaintiff." *Simpson v.*

16  *Fireman's Fund Ins. Co.,* 231 F.R.D. 391, 396 (N.D. Cal. 2005) (quoting *Rosario v. Livaditis,* 963

17  F.2d 1013, 1018 (7th Cir. 1992)). Typicality does not require that "all class members suffer the same

18  injury as the named class representative." *Id.* Thus, "the typicality requirement is not demanding."

19  *In re Heritage Bond Litig.*, 2004 WL 1638201, at *4 (C.D. Cal. Jul. 12, 2004).

20      Bodenburg's claims are typical of the claims of the absent class members she seeks to

21  represent. Like all putative class members, Bodenburg asserts claims for Apple's breach of the

22  iCloud agreement and derivative claims under the CLRA, FAL, and UCL based on the same

23  allegations underlying her breach of contract count. *See* FAC, ¶¶ 44-71. The legal theories she

24  asserts on her behalf are the same as the legal theories applicable to any class member's claim. Like

25  _____

26  [3] Plaintiff propounded discovery requests on Apple that would document Apple's paying iCloud
    subscribers for each month during the Class Period, but Apple has baselessly objected and refused
27  to produce *any* documents. *See* Ex. 5 to Katriel Decl. Plaintiff intends to file a motion to compel.

28  *Bodenburg et al. v. Apple Inc.*,                    Plaintiff's Motion For Class Certification
    No. 3:23-cv-4409-TLT

all class members, Bodenburg alleged (and now has documented) that she paid for an iCloud subscription (now called iCloud+), *see* Bodenburg Decl., at ¶ 2., under which Apple contractually promised that: "Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. ***Additional storage*** is available for purchase, as described below." Ex. 1 to Katriel Decl., at § I.C.  She alleges (and now has documented) that, despite these contractual representations, Apple was not providing the separate iCloud storage for which she paid "in addition to" the 5 GB of iCloud storage she (and all Apple device owners) already had but rather was only providing the paid storage *instead of* this 5 GB of already existing cloud storage, thus shortchanging her and all class members 5 GB of storage. *See* ECF No. 36 [Apple's Motion To Dismiss FAC], at 9:24-25 (admitting that the free 5 GB of storage and storage for which paying iCloud subscribers pay "is not accumulative").

Bodenburg, who reviewed the contractual language before she agreed to the iCloud agreement (Bodenburg Decl., at ¶ 3), explained that based on that review:

> I read and reviewed the iCloud agreement before I signed up for a paid iCloud subscription service (now called iCloud+) and started paying for additional iCloud storage.  These terms explained that I would be charged each month for the additional storage I wanted to buy.  It was my understanding that the 200GB of storage would be in addition to the 5GB of free storage, which I already had been receiving free of any charge.  Nothing that I read in the iCloud agreement indicated that Apple would take away any storage from users like me – only add to what we had.

Bodenburg Decl., at ¶ 3.

Bodenburg's pleading explained her damages claim.  Like all putative class members, she seeks an award of money damages "amounting to the difference in value to Plaintiff and the class members between the iCloud storage they contracted to receive from Apple and the diminished iCloud storage they actually received from Apple.  *See* FAC, at ¶ 50.

Bodenburg remains a current paying iCloud subscriber to this day and therefore is also a member of the proposed Rule 23(b)(2) class. *See* Bodenburg Decl., at ¶ 2.  She has been such a paid iCloud subscriber for each month of the Class Periods at issue in this case.  *Id.*   Her claims for injunctive relief, therefore, also are co-extensive with those of all current paying iCloud subscribers.

### C.  Plaintiff And Her Counsel Are Adequate Class Representatives.

Federal Rule of Civil Procedure 23(a)(4) requires that, "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  "Legal adequacy of a class representative under Rule 23(a)(4) turns on two inquiries: (1) whether named plaintiffs and their counsel have 'any conflicts of interest with other class members,' and (2) whether named plaintiffs and their counsel will 'prosecute the action vigorously on behalf of the class.'" *In re High-Tech Employee Antitr. Litig.*, 985 F. Supp.2d at 1181 (quoting *Hanlon,* 150 F.3d at 1020).

### 1.  Bodenburg Is An Adequate Class Representative.

Bodenburg is an adequate class representative. "Adequate representation depends on, among other factors, an absence of antagonism between representatives and absentees, and a sharing of interest between representatives and absentees." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).  There is no such antagonism here between Bodenburg and the absent class members; Plaintiff shares the interest with the absent class members of seeking redress for Apple's alleged breach of its iCloud agreement and violations of California's consumer protection laws.

Bodenburg's adequacy is further shown by her involvement.  Since the beginning of this case, she has conferred with counsel, reviewed and approved filings, submitted sworn declarations or affidavits, and remains ready to be deposed and go to any trial upon appropriate notice.  *See* Bodenburg Decl., at ¶¶ 4-5.  This investment to further the class members' claims speaks to Bodenburg's adequacy. *See Keegan v. American Honda Motor Co., Inc.*, 284 F.R.D. 504, 526 (C.D. Cal. 2012) (adequacy met where "class representatives have been engaged participants in this litigation, submitting declarations in support of plaintiffs' motions and making themselves available for deposition testimony.").  Moreover, Bodenburg's declaration shows her understanding of the action, claims being asserted, procedural posture, and the relief sought.  *See* Bodenburg Decl., ¶¶ 1, 3.

### 2.  Plaintiff's Counsel Are Adequate Representatives Of The Class.

Bodenburg hired competent counsel experienced in class action litigation.  Resumes for The Katriel Law Firm, P.C. and The Kalfayan Law Firm, A.P.C. are attached as Exhibit 4 to the Katriel

Declaration and Exhibit 1 to the Kalfayan Declaration. These firm resumes summarize these firms' records and experience in class action and complex litigation. The Katriel Law Firm was Class Counsel in *Williams v. Apple Inc.*, which also entailed breach of contract claims involving the same iCloud legal agreement at issue in this case and brought on behalf of a similarly defined class of U.S. paying iCloud subscribers. *See* Katriel Decl., at ¶ 2.

**D.    Common Questions Predominate For The Breach Of Contract Claim.**

Federal Rule of Civil Procedure 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). As the United States Supreme Court has underscored, "for purposes of Rule 23(a)(2) [e]ven a single [common] question will do." *Wal–Mart*, 564 U.S. at 359. Where questions common to class members present significant issues that can be resolved in a single adjudication 'there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Gaudin v. Saxon Mortg. Srvcs.*, 297 F.R.D. 417, 424-25 (N.D. Cal. 2013) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). This is so if the common claim is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id*.

Class actions seeking monetary relief also must meet the "predominance" requirement under Rule 23(b)(3): "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Predominance focuses on "the legal or factual questions that qualify each class member's case as a genuine controversy" to determine "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623 (quoted in *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp.2d at 1182). "Considering whether questions of law or fact common to class members predominate begins . . . with the elements of the underlying causes of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). A court must analyze these elements

to "determine which are subject to common proof and which are subject to individualized proof." *In re TFT-LCD Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010).  We do so below and show that the predominance requirement is readily met.

### 1. The Existence And Terms Of The iCloud Form Contract Present A Predominating Common Question.

All class members' claims rise or fall based on the same form contractual promise in the Apple-drafted iCloud agreements.  Bodenburg's and all putative class members' claims depend on the same contractual language in the form iCloud agreement:

> Your Account is allocated 5GB of storage capacity as described in the iCloud feature pages. ***Additional storage*** is available for purchase, as described below.

iCloud Legal Agreement [Ex. 1 to Katriel Decl.], at ¶ I.C. (emphasis added).

Unsurprisingly, given California's adherence to the objective theory of contract interpretation, California courts routinely certify breach of contract claims.  As Judge Koh explained in certifying the *Williams v. Apple Inc.* breach of contract action that involved the same iCloud legal agreement and rejecting Apple's objection that contract interpretation would depend on the individual meaning each class member ascribed to the contract:

> In this breach of contract action, it is undisputed that all putative class members agreed to a standardized iCloud Agreement containing the challenged language at issue. . . .
>
> Apple's argument is meritless. It is an 'axiom of contract law[ ] that when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, *without regard to their knowledge or understanding of the standard terms* of the writing.'" *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 302 (N.D. Cal. 2020) (quoting Restatement (Second) of Contracts § 211(2)) (collecting cases). Rather than weigh each class member's subjective understanding, 'courts in construing and applying a standardized contract seek to effectuate the reasonable expectations of the average member of the public who accepts it.' Restatement (Second) of Contracts ("Restatement") § 211(2) cmt. e. Applying this settled rule to class certification, many courts have rejected the argument Apple makes here.

*Williams*, 338 F.R.D. at 638 (additional citations omitted, emphasis in original).

Notably, this Court certified the *Williams* contractual claim after Judge Koh already found the contract language in that case was ambiguous and subject to dueling definitions. See *Williams*,

449 F.3d at 909 (finding iCloud Legal Agreement's contract language at issue ambiguous); *Williams*, 338 F.R.D. at 639 (certifying breach of contract claim and finding that ambiguity of contract language does not raise individual issues in interpreting form contracts like Apple's Legal Agreement).  Despite the ambiguity and the need to resort to extrinsic evidence to interpret the agreement's meaning, the Court, citing Ninth Circuit precedent, found there was no impediment to class certification because the same meaning ultimately resulting for this ambiguous contract language would apply across the class to the form agreement Apple drafted.  *See Williams*, 338 F.R.D. at 639 (certifying breach of contract class and noting that, "the *Risinger* Court affirmed the certification of a breach of contract class, even though the alleged breach at issue turned on the ambiguous term") (citing *Risinger v. SOC, LLC*, 2015 WL 13670894, at *6 (D. Nev. Sept. 30, 2015), *aff'd* 708 Fed. App'x 304, 306 (9th Cir. 2017)).

Bodenburg relies on an interpretation of this contractual promise that follows the plain meaning of the Agreement's text—text Apple drafted unilaterally.  The plain and common meaning of the governing contract term "additional" is precisely the meaning Plaintiff ascribes to it.  That is confirmed by authoritative English language dictionaries, a practice common when a court seeks to ascertain the meaning of contractual language.  *See Morris v. Allstate Ins. Co.*, 16 F. Supp.3d 1095, 1102, n.3 (C.D. Cal. 2014) ("[I]nterpreting the contract is a legal question, and applying the dictionary meaning to the ordinary word 'windstorm' is wholly appropriate.").

The Oxford English Dictionary defines the term "additional" as follows:

**additional, adj. & n.**

That is *in addition to something else*; *added, extra, supplementary*. Also used predicatively, with to (frequently in postmodifying verbless clause).

available at https://www.oed.com/search/dictionary/?scope=Entries&q=additional (last visited Apr. 30, 2024) (emphasis added).

By contrast, Apple argues for a rival interpretation of the same contractual term under which the "additional storage" Apple is to provide supplants the 5 GB of free storage that Bodenburg and all other putative class members already had for free.   As Apple puts it, under its reading of the

1  contract, the storage it provides in exchange for the iCloud+ monthly payment "is not accumulative"

2  to the iCloud storage class members already had and were receiving automatically free of charge.

3  ECF No. 36 [Apple's Motion To Dismiss FAC], at 9:24-25.

4          Apple's interpretation is fanciful—especially when Apple drafted the contract and

5  purposefully chose not to disclose that by subscribing to a paid iCloud tier (now called iCloud+),

6  consumers would give up the 5 GB of storage they already were receiving for free from Apple.  Nor

7  can Apple's reading of the contract be squared with the fact that it offers two separate and differently

8  named storage products: the free 5 GB of storage called "iCloud" automatically provided to all Apple

9  device owners and the paid subscription storage plan, which also provides other features, that Apple

10  now calls "iCloud+."  See FAC, at ¶ 7. Nothing in the contract Apple drafted even remotely suggests

11  that by paying for "iCloud+" a consumer would give up her right to receive the separate "iCloud"

12  storage offering she already was receiving from Apple.

13          For this class certification motion, however, the salient point is that the case entails

14  interpretation of a single contractual term that is verbatim identical across all form contracts for all

15  class members.  This evidences the predominating common question driving this litigation.  Judge

16  Koh explained as much in certifying yet another breach of contract class action that raised rival

17  interpretations of a form contract:

18          Members of the Inability to Verify class all signed one of two types of HELOC
           contracts with WaMu. *Both Plaintiffs and Defendants rely on the interpretation of*
19          *the HELOC contracts to support their claims or defenses*. Plaintiffs argue that
           Chase breached the class members' contracts by blocking HELOCs in response to
20          class members' failure to provide IRS Forms, paystubs or both. Defendants argue
           that Plaintiffs materially breached the agreement by failing to provide all the
21          income information requested. *Thus, interpretation of these form contracts is likely*
           *to drive the outcome of Plaintiffs' claims in the Inability to Verify class*.
22

23  *Schulken v. Washington Mut. Bank*, 2012 WL 28099, at *10 (N.D. Cal. Jan. 5, 2012) (Koh, J.) (italics

24  added); *In re Med. Capital Sec. Litig.*, 2011 WL 5067208, at *3 (C.D. Cal. July 26, 2011) (collecting

25  cases finding "[c]ourts routinely certify class actions involving breaches of form contracts").

26

27

a.  **California's Adoption Of Restatement (Second) Contracts § 211(2) Supports Classwide Treatment.**

That the iCloud form contracts are all governed by California law also furthers the argument for predominating commonality in interpreting their terms.  This is so because California adopts Section 211(2) of the Restatement (Second) of Contracts.  That Section, entitled **"Standardized Agreements,"** provides that:

> (2) Such a writing is interpreted wherever reasonable ***as treating alike all those similarly situated, <u>without regard to their knowledge or understanding of the standard terms of the writing</u>***.

Restatement (Second) Contracts, § 211(2) (emphasis added).

This Court repeatedly has resorted to Section 211(2) to conclude that claims for breach of such a standard form contract should be accorded classwide treatment regardless of whether an ambiguity exists that requires resort to extrinsic evidence.  Judge Whyte, for example, explained Section 211(2)'s application to find classwide treatment proper for claims of breach of eBay's form contract even when ambiguities existed and individual subscribers' understanding could differ:

> However, as plaintiffs point out, when there is a standardized agreement like the form contract at issue in this case, the agreement "is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." Restatement (Second) of Contracts § 211(2). '[C]ourts in construing and applying a standardized contract ***seek to effectuate the reasonable expectations of the average member of the public who accepts it. The result may be to give the advantage of a restrictive reading to some sophisticated customers who contracted with knowledge of an ambiguity or dispute*.' *Id. at Comment e. Accordingly, in construing the form contract between eBay and class members, the court need not delve into the actual knowledge of individual class members.* The court therefore concludes that plaintiffs' breach of contract claim does not raise individual issues likely to be the object of most of the court's and the parties' efforts.

*Ewert v. eBay,* 2010 WL 469259, at *7 (N.D. Cal. Oct. 25, 2010) (emphasis added); *see Rodman v. Safeway, Inc.*, 2014 WL 988992, at *8 (N.D. Cal. Mar. 10, 2014) (breach of form contract class certified: "If the Court does need to consider extrinsic evidence (to determine whether the language is ambiguous or to resolve any identified ambiguity), extrinsic evidence about the reasonable objective meaning of these words can be considered without endangering predominance.").

As Judge Breyer also explained in resorting to Section 211(2):

> State Farm asks the Court to accept that its agents bind it to thousands of individual contracts that, despite the use of a standard form, all consist of materially different terms based on unwritten representations that each agent makes to a purchaser. This runs counter to an axiom of contract law, that when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.' Restatement (Second) of Contracts § 211(2);  The Court finds that the putative Class meets the commonality requirement.

*Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 302 (N.D. Cal. 2020) (other citations omitted).

So too, Judge Illston explained:

> Conseco contends that because the policies are sold by individual agents to individual policyholders, the Court would need to 'consider the content of sales presentations from agents to policyholders to divine what the policyholders understood the COI provision to mean.' Conseco's argument misses the mark. The insurance contracts at issue here are standard forms. They are drafted as such precisely in order to avoid the problem Conseco now invites—that thousands of policyholders have thousands of different understandings of a standard form. Allowing Conseco's assertion that its agents had multiple and inconsistent understandings of a *standard form,* to defeat class certification here would up-end Rule 23's commonality requirement.

*In re Conseco Life Ins. Litig.*, 920 F. Supp.2d 1050, 1065 (N.D. Cal. 2013), order vacated on other grounds pursuant to parties' settlement, 2013 WL 10349975, at *5, ¶ 8 (N.D . Cal. Nov. 8, 2013).

That reasoning holds special force here because there was no individual negotiation or bargaining.  It therefore would be fiction to claim that the meaning of the iCloud form contract could be determined only by examining individual interactions between Apple and each of its millions of contracting iCloud subscribing class members.  As Judge Illston explained in *Conseco*, that would run counter to the whole point that form contracts "are drafted as such precisely in order to avoid the problem Conseco now invites—that thousands of policyholders have thousands of different understandings of a standard form." *In re Conseco Life Ins. Litig.*, 920 F. Supp.2d at 1065.  Here, that would lead to the absurd result that the same iCloud form contract could be subject to millions of different interpretations depending on the subjective understanding of each paying iCloud subscriber.

**b. California's Contract Maxim That Ambiguities In Form Contracts Are Construed Against The Drafter Support Classwide Treatment.**

If, as both Bodenburg and Apple urge, the iCloud agreement's language is unambiguous, the commonality and predominance analysis is especially straightforward. "Interpretation of an unambiguous contract is also a question of law." *SCC Alameda Point LLC v. City of Alameda*, 897 F. Supp.2d 886, 892 (N.D. Cal. 2012). Thus in the face of an unambiguous contract, the same legal analysis would apply in common to each class member's contractual claim.

But even if the Court ignored both parties and, as in *Williams*, independently ruled the contractual language ambiguous, that still would not affect the propriety of class certification. This is especially so given California's resort to the contract maxim under which ambiguities in form contracts are construed against their drafter (here Apple). Judge Gonzalez-Rogers faced the same scenario as here—two dueling interpretations advanced by the parties to a standard form contract drafted by Uber. She explained why any ambiguity in that contract did not undermine class certification:

> Importantly, even if the Court were to lend credence to Uber's interpretation of the 'Minimum Fare' as a 'Safe Rides Fee'-inclusive 'total fare,' which it does not do for the aforementioned reasons, ***this would, at best, indicate that the Agreement was capable of two constructions. Assuming, for the sake of argument, that both constructions were reasonable, the Agreement would be deemed ambiguous. This outcome is significant in the context of this case, which involves standard form contracts. The rule of contract interpretation that ambiguous terms in a contract must be construed against the drafter applies "with peculiar force" in the case of standard form contracts.***

*Congdon v. Uber Tech., Inc.*, 291 F. Supp.3d 1012, 1024, n.14 (N.D. Cal. 2018) (italics in original).

The California Supreme Court has explained as much:

> Since the alleged ambiguities appear in a standardized contract, drafted and selected by the bank, which occupies the superior bargaining position, those ambiguities must be interpreted against the bank. ***The rule of resolving ambiguities against the drafter 'does not serve as a mere tie-breaker; it rests upon fundamental considerations of policy.'*** Thus, in determining whether an instrument is reasonably susceptible to an interpretation suggested by the extrinsic evidence, one factor for consideration by the court is whether that interpretation would do violence to the principles of construing documents against the party who drafts and selects them.
>
> In the present case, ***we conclude that to permit a creditor to choose an allegedly***

1   ***ambiguous form of agreement, and then by extrinsic evidence seek to give it the***
2   ***effect of a different and unambiguous form, would be to disregard totally the***
    ***rules respecting interpretation of adhesion contracts, and to create an extreme***
    ***danger of over-reaching on the part of creditors with superior bargaining***
3   ***positions. The bank must bear the responsibility for the creation and use of the***
    ***assignment it now claims is ambiguous; it is only 'poetic justice' (CEB, s 2.38) if***
4   ***such ambiguity is construed in favor of the borrower.***

5   *Tahoe Nat'l Bank v. Phillips*, 4 Cal.3d 11, 20 (1971) (emphasis added).

6       That reasoning applies here.  As *Tahoe Nat'l Bank* clarifies, Apple cannot now seek to
7   advantage itself by offering an ambiguous form contract and then, by resort to some undisclosed
8   extrinsic evidence seek to give that contract the meaning of Apple's choosing.  *Tahoe Nat'l Bank*
9   clarifies that California law instead requires the ambiguity to be construed against Apple.

10      At bottom, the Court will ultimately rule whether the contractual language at issue here that
11  Apple unilaterally included in its iCloud form agreements is unambiguous (as both parties contend)
12  or ambiguous.[4]  Either way, however, the interpretation of the contractual language is subject to
    common predominating proof.  Either way, Bodenburg meets the commonality and predominance
13  requirements of Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).
14

            **2.   Proof Of Breach Also Poses Predominating Common Questions.**
15
16      Proof of Apple's breach of the iCloud agreements also is subject to common predominating
17  evidence.  The proof is Apple's own admission.  Apple concedes that the storage it sells as part of
    any paid iCloud subscription tier (now called iCloud+) "is not accumulative" to the 5 GB of free
18  storage each class member already had and was receiving from Apple with no subscription. ECF
19  No. 36 [Apple's Motion To Dismiss FAC], at 9:24-25.
20
        That is, Apple does not dispute Plaintiff's contention that Apple does not provide the storage
21  tier for which Bodenburg paid (200 GB per month) on top of the 5 GB of storage Bodenburg already
22  had.  Thus, if Bodenburg succeeds in proving her contract interpretation, proof that Apple fails to
23  adhere to the contractual promise is undisputed and established across the class by Apple's own
24  admission.  *See Chinitz v. Intero Real Estate Srvcs.*, 2020 WL 7391299, at *12 (N.D. Cal. Jul. 22,
25

26  _____
    [4] "Whether language in a contract is ambiguous is a question of law to be determined by the court."
27  *SCC Alameda Point LLC*, 897 F. Supp.2d at 892.

    *Bodenburg et al. v. Apple Inc.*,                          Plaintiff's Motion For Class Certification
28  No. 3:23-cv-4409-TLT

                                    -19-

2020) (certifying class after agreeing with plaintiffs' claim that defendant's own "admissions" provided common predominating evidence of liability).

**E.      Bodenburg's Consumer Protection Statutory Claims Under The CLRA, FAL, And UCL Are Also Subject To Common Predominating Evidence.**

In addition to her first count for breach of contract, Bodenburg also asserted claims for CLRA, FAL, and UCL violations.  These claims all rely on the same Apple conduct underlying Bodenburg's breach of contract count.  She claims that by shortchanging class members 5 GB of storage relative to what Apple promised in its iCloud Legal Agreement, Apple engaged in misrepresentation in violation of the CLRA and false advertising in violation of the FAL.  Any violation of these statutes would *a fortiorari* also amount to a UCL violation.

**1.      Interpretation Of Apple's Alleged Misrepresentation Or False Advertisement Is Subject To Common Predominating Evidence.**

Unsurprisingly, because the same underlying conduct applies to these statutory counts as to Bodenburg's breach of contract claim, the commonality and predominance requirements are also met as to these claims.  For starters, the iCloud Legal Agreement that forms the basis of Bodenburg's breach of contract count also forms the basis of her false advertising and misrepresentation claims.  This is so because California law recognizes that a form agreement as to a service that the defendant publishes to the public on its website amounts to an advertisement within the meaning of California's consumer protection statutes.  *See CLRB Hanson Indus. LLC v. Google Inc.*, 2008 WL 11388378, at *1-*2 (N.D. Cal. Dec. 16, 2008) (upholding FAL claims based on representations made on Google's Agreement).

Discerning whether the cited language in Apple's iCloud Legal Agreement amounts to misrepresentation or false advertising naturally depends on an interpretation of that language.  As already detailed, that interpretation relies on common predominating evidence as to the meaning of this language in the Apple form contracts (that are also an advertisement upon being posted publicly on Apple's website).  The same common predominating interpretation tools applicable to Bodenburg's contract claim apply to the CLRA, FAL, and UCL claims and none depend on the subjective understanding of each individual class member.  *See Ham v. Hain Celestial Grp., Inc.*, 70

F. Supp.3d 1188, 1193 (N.D. Cal. 2014) ("For claims arising under California's UCL, FAL, and CLRA, the plaintiff must show that reasonable consumers are likely to be deceived ").

Nor can Apple try to resort to other independent and later ads or disclosures it claims to have published for iCloud and iCloud+ to avoid the misrepresentation or deceptiveness posed by Apple's iCloud Legal Agreement.  The reason is straightforward.  Apple chose to repeatedly admonish all its iCloud subscribers that they should look only to the iCloud Legal Agreement to the exclusion of any other representations in order to understand the scope and features of the iCloud service Apple was offering.  Apple did this at least twice within the iCloud Legal Agreement.  First, at the first paragraph of the iCloud Legal Agreement in the only part of the Agreement that Apple chose to provide in all capitalized text, Apple cautioned its iCloud subscribers:

> THIS LEGAL AGREEMENT BETWEEN YOU AND APPLE GOVERNS YOUR USE OF THE iCLOUD PRODUCT, SOFTWARE, SERVICES, AND WEBSITES (COLLECTIVELY REFERRED TO AS THE 'SERVICE'). IT IS IMPORTANT THAT YOU READ AND UNDERSTAND THE FOLLOWING TERMS. BY CLICKING 'AGREE,' YOU ARE AGREEING THAT <u>THESE TERMS WILL APPLY</u> IF YOU CHOOSE TO ACCESS OR USE THE SERVICE.

Ex. 1 to Katriel Decl., at p.1 (capitalization in original, underlining added).

To underscore the point, Apple also ended the Agreement by including an ironclad integration clause to prevent subscribers from relying on any promises made in any other document:

> This Agreement constitutes *the entire agreement between you and Apple, governs your use of the Service* and completely replaces any prior agreements between you and Apple in relation to the Service.

Ex. 1 to Katriel Decl., at ¶ X.C (emphasis added).

Given Apple's repeated admonitions that the terms of the iCloud Legal Agreement—and only the iCloud Legal Agreement—would govern Apple's iCloud offering, Apple cannot now seek to rely on external advertisements or disclosures it published separately from the Agreement to urge that some class members may have had a different understanding.  Here, the same form contract (the iCloud Legal Agreement) exclusively governs the interpretation of the representation that Bodenburg alleges Apple did not adhere to in violation of the CLRA, FAL, and UCL.  For the same reasons that this key evidence was already shown to be common and predominating with respect to Bodenburg's contractual claim, it is also common and predominating regarding her statutory claims.

**2. Proof Of Reliance For The Statutory Claims Also Is Subject To Common Predominating Evidence Given California's Presumption.**

"Reliance is not an element of a breach of contract claim." *Rodman v. Safeway Inc.*, 125 F. Supp.3d 922, 933, n.9 (N.D. Cal. 2015).  To the extent that reliance would need to be shown for any of Bodenburg's statutory claims, proof of reliance is also subject to common predominating evidence.  This is so because for material misrepresentation claims as asserted here, California applies a presumption of classwide reliance.  The Ninth Circuit repeated as much just three weeks ago when it affirmed a class certification grant in a case asserting misrepresentation claims against Meta Platforms (formerly "Facebook"):

> The district court properly determined that the element of justifiable reliance is capable of classwide resolution. Under California law, '*when the same material misrepresentations have actually been communicated to each member of a class,* an inference of reliance arises as to the entire class.'  Because Meta communicated the same misrepresentation to all class members—that Potential Reach measures people when it really measures accounts—the class is entitled to an inference of reliance.

*DZ Reserve v. Meta Platforms, Inc.*, 96 F.4th 1223, 1237 (9th Cir. 2024) (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1095 (1993)) (italics in original).

And in affirming class certification based on this presumption of classwide reliance, the Ninth Circuit in *Meta Platforms* also rejected the defendant's argument that reliance posed individual questions that defeated commonality because any such presumption was subject to being rebutted:

> The purpose of the presumption of reliance is to avoid precluding all fraud class actions. . Accordingly, if the availability of rebuttal defeated commonality, the presumption would be pointless. While rebuttal has the effect of leaving individualized questions of reliance in the case, there is no reason to think that these questions will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3).

*Id.* (citations and quotations omitted).

**3. Plaintiff's  Economic Damages Expert's Report Provide A Common Method Of Calculating Classwide Damages.**

For Plaintiff's Rule 23(b)(3) class, Bodenburg offers a common method of proving classwide damages. The expert report of economist Russell W. Mangum III, Ph.D. addresses and shows the

existence of a common method for proving classwide damages. *See* Mangum Expert Report., at ¶¶ 19-23. Dr. Mangum, an experienced and renowned economist, coincidentally was one of the plaintiff's damages expert in *Williams v. Apple* on whose opinion this Court relied to certify the that case also entailing a breach of contract claim involving the same iCloud Legal Agreement at issue here. *See Williams*, 338 F.R.D. at 648-49 (citing Mangum expert damages report in order certifying class).

As Dr. Mangum explains:

> In this matter, damages can be modeled by assessing the difference in economic value of iCloud services that Class Members agreed to and paid for compared to the economic value of iCloud services Class Members actually received. More specifically, damages are the difference between what was agreed to and what they actually received.

Mangum Expert Report, at ¶ 20.

Given this damages framework, the damages per class member can be calculated by the same method across the class; namely by computing the per gigabyte value of each paid iCloud subscription plan and using that figure to calculate the value of 5 GB of storage by which each class member claims to have been shortchanged:

> The monthly pricing for the paid subscription iCloud plans is $0.99 for the 50 GB plan, $2.99 for the 200 GB plan, and $9.99 for the 2 TB plan. 26 To calculate the damages for a representative class member, I can multiply the monthly plan price by the ratio of the allegedly missing storage (5 GB) to the total storage offered in that specific plan.

*Id.*, at ¶ 22; *see also id.*, at ¶ 22, n.27 ("The formula is equivalent to computing the price per GB for each plan then calculating the value of an additional 5GB.").[5]

**F. A Class Action Is A Superior Form To Adjudicate Class Members' Claims.**

Classwide adjudication presents a superior method of resolution over individual litigation of each class member's claims. "Superiority" under Rule 23(b)(3) is met here, "because damages

---

[5] Bodenburg's breach of contract (Count I) and CLRA (Count II) claims are claims at law that provide for redress in the form of money damages whereas her UCL claim (Count IV). As Dr. Mangum makes clear, however, the means of computing classwide damages through a common method applies equally regardless of whether recovery is termed to be "damages" or "restitution." *See* Mangum Expert Report, at ¶ 4, n.4.

for each putative class member in this action are likely to *de minimis*, class members are unlikely to have an interest in individually pursuing claims." *Cabrera v. Bayer Healthcare LLC*, 2024 WL 1699357, at *12 (C.D. Cal. Feb. 23, 2024).  Here, Apple has admitted that litigation for damages individually would yield a "*de minimis*" recovery.  *See* ECF No. 52 [Apple's Resp. To Court's Questions], at Resp. No. 6.  Only by aggregating each of these small individual recoveries for each of the many millions of paying iCloud subscribers over the months during the Class Period during which they were paying iCloud subscribers does the litigation raise a substantial amount in controversy that makes it economically feasible to maintain the action, thus fitting the quintessential definition of superiority.  Bodenburg's claims all readily meet Rule 23's superiority requirement for class certification.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion should be GRANTED.


Dated: April 30, 2024                          Respectfully submitted,

                                               /s/ Roy A. Katriel
                                               _____
                                               Roy A. Katriel (SBN 265463)
                                               **THE KATRIEL LAW FIRM**
                                               2262 Carmel Valley Road, Suite 201
                                               Del Mar, California 92014
                                               Telephone: (619) 363-3333
                                               Facsimile:  (866) 832-5852
                                               e-mail: rak@katriellaw.com

                                               Ralph B. Kalfayan (SBN 133464)
                                               Ian D. Krupar (SBN 350391)
                                               **THE KALFAYAN LAW FIRM, APC**
                                               2262 Carmel Valley Road, Suite 200
                                               Del Mar, California 92014
                                               Telephone: (619) 232-0331
                                               Facsimile: (619) 232-4019
                                               e-mail: ralph@rbk-law.com
                                               e-mail: ian@rbk-law.com

                                               *Counsel for Plaintiff Lisa Bodenburg and the*
                                               *Proposed Class*